IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARK BASILICA, et al.,
        Plaintiffs,

v.     Civil Action No. 3:22cv382

SHERIFF ROGER L. HARRIS, et al.,
        Defendants.

## OPINION

On August 30, 2020, Theresa Marie Basilica ("Basilica") went to the emergency department at Mary Washington Hospital, seeking help during a mental health crisis. Eighteen hours later, she died of a self-inflicted gunshot while in the defendants' custody. Mark and Roberta Basilica, as the administrators of their daughter's estate, filed suit against Spotsylvania County Sheriff Roger L. Harris ("Harris"), Rachel Vega ("Vega"), and Jason Morris ("Morris"). In their amended complaint, the plaintiffs sue the defendants for wrongful death under Virginia law, civil rights violations pursuant to 42 U.S.C. § 1983, and violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act. The defendants move to dismiss all counts.

This case presents unusual facts. Essentially, the plaintiffs say that Basilica posed a known risk of suicide, that she had hidden a pistol in her bra, that the deputy sheriffs did not check her for weapons, and that their failure to do so resulted in her killing herself with the hidden gun. She says that this amounts to a) gross or willful negligence under Virginia law, b) an unreasonable seizure under the Fourth Amendment, and c) deliberate indifference to her medical needs under the Fourteenth Amendment. They also say that the Sheriff is liable for failure to train the officers to prevent suicides.

At this stage, before the parties flesh out the facts, the Court must view the allegations in the light most favorable to the plaintiffs. Although liability is far from clear, the plaintiffs have asserted facts supporting a wrongful death claim, and deliberate indifference claim, and a failure to train claim. The Court finds that no Fourth Amendment violation occurred, because the deputies did not seize the Basilica during the relevant time.

Court will grant the motion in part and dismiss Counts Two, Five, and Six.[1] The Court will deny the motion as to the remaining counts because the plaintiffs have stated claims upon which relief may be granted.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

### *A. Facts Alleged as to Basilica*

On August 30, 2020, around 7:17 a.m., Basilica went to the emergency department at Mary Washington Hospital in Fredericksburg. (ECF No. 15 ¶ 31.) She reported experiencing mania and paranoia, along with "a past medical history notable for attention deficit disorder, obsessive-compulsive disorder, and bipolar 1 disorder." (*Id.* ¶ 33.) The hospital staff assigned Basilica to a room, and a hospital security officer "searched around Basilica's waist but not her breast area as he was not comfortable since she was female." (*Id.* ¶ 48.)

The attending physician ordered a mental health evaluation. During the evaluation, Basilica "endorsed auditory and visual hallucinations ... talked about her distrust for law enforcement[,] stating she 'hates cops'... [and was] 'terrified' of them." (*Id.* ¶¶ 38, 39.) The social worker, Tessa Lange ("Lange"), who conducted the evaluation "recommended psychiatric hospitalization for Basilica due to high suicide risk, paranoia, recklessness" and requested

---

[1] The plaintiffs concede that Counts Five and Six are time-barred and do not oppose their dismissal. (ECF No. 21.)

"security 1:1." (*Id.* ¶¶ 47, 49.) She did not believe Basilica had the capacity to consent to treatment. Upon the application of a Rappahannock Area Community Services Board member, Magistrate Jane E. Tomiko entered an emergency custody order ("ECO") for Basilica.[2] Spotsylvania County Sheriff's Office ("SCSO") Deputy Kaitlyn Herzig ("Herzig") served the ECO on Basilica, at which point Basilica entered the SCSO's custody. (ECF No. 15 ¶ 66.) Throughout the day, Basilica's condition worsened. At several points during the day Herzig left Basilica unsupervised, even though Lange had recommended 1:1 security observation. (*Id.* ¶¶ 121–29.)

That evening Magistrate Frederick D. Howell, Jr., issued a temporary detention order ("TDO").[3] The TDO required the SCSO to transport Basilica to Western State Hospital in

---

[2] Pursuant to Va. Code § 37.2-808, a

> magistrate shall issue … an emergency custody order when he has probable cause to believe that any person (i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, … (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

Va. Code § 37.2-808(A). An emergency custody order requires that law enforcement take the individual into custody "to be evaluated to determine whether the person meets the criteria for temporary detention pursuant to § 37.2-809 and to assess the need for hospitalization or treatment." *Id.* § 37.2-808(B).

[3] A magistrate issues a TDO after the individual has been evaluated and "all evidence readily available" shows that the individual meets the criteria: mental illness and "a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm[;]" (b) a need for hospitalization or treatment; and (c) an incapacity to consent to treatment. Va. Code § 37.2-809(B). The permitted duration of a TDO allows for an examination, report, and the "initiation of mental health treatment to stabilize the person's psychiatric condition to avoid involuntary confinement where possible, but shall not exceed 72 hours prior to a hearing." *Id.* § 37.2-809(H).

Staunton, Virginia, for in-patient treatment. Around 12:16 a.m., on August 31, 2020, SCSO deputies Vega and Morris arrived to take Basilica to Western State Hospital. They "were specially assigned to the Courts & Civil Process Division of the SCSO, the only division within the SCSO authorized to transport individuals subject to a TDO." (ECF No. 15 ¶ 90.)

Before entering Basilica's room, Morris read the TDO. (*Id.* ¶ 94.) Vega woke Basilica and informed her of the transfer. Basilica "became upset." (*Id.* ¶ 96.) Neither deputy interviewed Basilica or searched her before placing her in restraints and a wheelchair. She "began kicking and resisting." (*Id.* ¶ 107.) She "became combative and struggled with the deputies." (*Id.* ¶ 109.) Vega and Morris wheeled Basilica out of the hospital and loaded her into the backseat of their SUV. The SUV traveled about 1,000 yards before Basilica shot herself in the head with "a .357 caliber SP101 Ruger revolver" that she had apparently hidden somewhere on her body. (*Id.* ¶ 117.) She died instantly.

### B. Facts Alleged as to Dennis Christopher Howard

The plaintiffs allege that in 2018 – two years before Basilica's death – an individual (Dennis Christopher Howard, or "Howard") attempted suicide in SCSO custody with a firearm and that Harris had notice of the risks involved with suicidal individuals in SCSO custody. On August 16, 2018, Howard left a suicide note on his kitchen table. (ECF No. 15 ¶ 22.) A friend found the note and called the SCSO. Deputies found and arrested Howard because he admitted to having a firearm and ammunition; as a felon, Howard could not legally possess either. A deputy drove Howard back to his house but left him handcuffed in the backseat unsupervised. (*Id.* ¶¶ 25–26.) Howard then climbed through the open partition to the front seat, grabbed a gun, and shot himself. He survived but suffers from permanent and catastrophic injuries. (*Id.* ¶ 28.)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the evidentiary merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must therefore state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III. DISCUSSION

Basilica's parents, as the administrators of her estate, filed suit, alleging wrongful death under Virginia law (Count One against all defendants); unreasonable search and seizure in violation of Basilica's Fourth Amendment rights, pursuant to 42 U.S.C. § 1983 (Count Two against Vega and Morris); deliberate indifference to Basilica's medical needs in violation of her Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 (Count Three against Vega and Morris); supervisory liability, pursuant to 42 U.S.C. § 1983 (Count Four against Harris); and two claims of violations of the ADA and Rehabilitation Act (Counts Five and Six against Harris). The plaintiffs concede that Counts Five and Six are time-barred and do not oppose dismissal of these counts. (ECF No. 21.)

### *A. Wrongful Death (Count One)*

In Virginia, a plaintiff may bring a cause of action for wrongful death, pursuant to Va. Code § 8.01-50, when the death arises from another party's negligence. Va. Code § 8.01-50. Virginia courts have permitted plaintiffs to bring wrongful death actions stemming from a suicide when the decedent did not have sound mind. *See, e.g.*, *Molchon v. Taylor*, 262 Va. 175, 546 S.E.2d 691 (2001) (affirming the trial court's confirmation of a jury verdict for the plaintiffs in a wrongful death case involving a suicide) ; *Wackwitz v. Roy*, 244 Va. 60, 418 S.E.2d 861 (1992) (holding that if the decedent was of unsound mind when he killed himself, his act would not be a bar to a wrongful death action).

The plaintiffs have stated a claim for wrongful death against all three defendants, alleging gross negligence and willful and wanton conduct. To show gross negligence, the plaintiff must demonstrate "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Commonwealth v. Giddens*, 295 Va. 607, 613, 816 S.E.2d 290, 294 (2018) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (2004)). "[A] claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016). Even ineffectual or inadequate efforts may meet the required degree of care, provided the efforts "were not so insufficient as to constitute the indifference and utter disregard of prudence that would amount to a complete neglect for [an individual's] safety." *Id.* at 623, 733. "There is adequate evidence to support a finding of gross negligence when a defendant is aware of a danger but fails to take any precautions to guard against that danger." *Caramillo v. Correct Care Sols., LLC*, No. 2:19cv362, 2020 WL 4747786, at *7 (E.D. Va. Feb. 28, 2020) (citing *Volpe v. City of Lexington,* 708 S.E.2d

824, 829 (Va. 2011); *Chapman v. City of Va. Beach,* 475 S.E.2d 798, 801 (Va. 1996)). Indeed, "'gross negligence does not require a finding that a defendant *knew* of a substantial risk,' '[i]t is enough that the defendant *should* have been aware of that risk.'" *Id.* (first emphasis added) (quoting *Hixson v. Hutcheson,* Nos. 5:17cv32; 5:18cv1, 2019 WL 302516, at *7 (W.D. Va. Jan. 23, 2019)). *But see Reid v. Newton,* No. 3:13-CV-572, 2014 WL 1493569, (E.D. Va. Apr. 14, 2014) at *7 ("In the case of failure to act, deliberate conduct necessarily implies actual knowledge of facts that create a choice to act or abstain.").

"Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted." *Curtis v. Highfill,* 298 Va. 499, 505–06, 840 S.E.2d. 321, 324 (2020) (quoting *Alfonso v. Robinson,* 257 Va. 540, 545, 514 S.E.2d 615 (1999)). "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id.* at 505, 324 (quoting *Infant C. v. Boy Scouts of Am., Inc.,* 239 Va. 572, 581, 391 S.E.2d 322 (1990)).

> If a tortfeasor "realizes or, from facts which he knows, should realize that there is a strong probability that harm may result" from his actions, the tortfeasor may be found to have acted in a willful and wanton or reckless manner "even though he hopes or even expects that his conduct will prove harmless."

*Id.* at 506, 324 (quoting *Infant C.,* 239 Va. at 582–83, 391 S.E.2d at 322).

In their wrongful death claim, the plaintiffs assert different theories of liability for the two deputies (Vega and Morris) and the sheriff (Harris). Starting with the deputies, the plaintiffs argue that, by virtue of the TDO, Vega and Morris had notice of Basilica's risk of harm to herself and others. Neither officer spoke with hospital staff to understand whether Basilica had access to weapons or had been left unsupervised. Neither officer conducted a pat down nor interviewed her

to better understand the risks she posed during the long drive to Staunton. The plaintiffs allege that Vega and Morris took no precautions against these risks. For Harris, the plaintiffs assert respondeat superior imposes liability on Harris.[4]

The defendants argue that, by restraining Basilica, Vega and Morris showed some degree of care, sufficient to defeat gross negligence. They assert that even inadequate efforts demonstrate a sufficient level of care. The plaintiffs argue Vega and Morris undertook these efforts to protect themselves, as precautions against danger to themselves. They assert Vega and Morris's gross negligence lies in that the deputies did not take precautions to protect Basilica from the danger she posed to herself.

In addition, the defendants assert that the plaintiffs cannot recover damages for wrongful death because Basilica "willingly participate[d] in an illegal or immoral act" and suffered "injuries as a consequence of that act." (ECF No. 18, at 11.) The defendants allege Basilica unlawfully possessed a firearm while subject to a TDO, which Virginia Code § 18.2-308.1:3 prohibits. (*Id.*) The plaintiffs respond that § 18.2-308.1:3, by its plain language, only applies to a person "who was the subject of a temporary detention order pursuant to § 37.2-809 *and* subsequently agreed to voluntary admission pursuant to § 37.2-805." Va. Code § 18.2-308.1:3(A)(iv) (emphasis added). Basilica never consented to voluntary admission. Accordingly, § 18.2-308.1:3 does not apply and does not bar the plaintiffs' recovery.[5]

---

[4] The Court notes that the standard of review in a 12(b)(6) motion tests the legal sufficiency of a claim. At later stages in litigation, the standard of review becomes more exacting. While these claims against Harris survive the defendants' motion to dismiss, the plaintiffs must develop much stronger factual support to prevail at summary judgment.

[5] The plaintiffs argue that because Basilica lacked capacity, she was not of sound mind when she became subject to the TDO. She could not willingly participate in an unlawful act without a culpable state of mind.

8

The plaintiffs have satisfied the gross negligence standard: the officers knew of the danger Basilica posed and took no precautions. *See Caramillo*, 2020 WL 4747786, at *7. Viewing the facts alleged in the light most favorable to the plaintiffs, the plaintiffs have adequately pleaded their claim. Accordingly, the Court will deny the defendants' motion to dismiss Count One.

### *B. Unreasonable Seizure Based on Failure to Search (Count Two)*

In determining "the reasonableness of a particular search or seizure in light of the particular circumstances," the Court must assess whether "the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). The Fourth Circuit has not yet ruled on whether or how an arresting officer's responsiveness to an individual's medical needs factors into a court's determination of a seizure's reasonableness. The Seventh Circuit has held "that an officer violates the prohibition on unreasonable seizures when, in the course of making an otherwise lawful arrest, he does not respond reasonably to an arrestee's medical needs." *Florek v. Village of Mundelein*, 649 F.3d 594, 598 (7th Cir. 2011). No other circuit has adopted this interpretation of the Fourth Amendment. Indeed, courts tend to consider an arrestee's medical needs in the context of the Eighth or Fourteenth Amendments and the deliberate indifference standard, rather than the Fourth Amendment. *See, e.g., Krell v. Braightmeyer*, 828 Fed. App'x 155, 159 (4th Cir. 2020) (unpublished); *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989) (considering the arrestee's denial of medication claim as a potential Fourteenth Amendment violation and remanding to the district court).

The plaintiffs make a novel argument. They assert that Vega and Morris knew Basilica posed a substantial risk of harm to herself or others (her medical need) and failed to search her for

weapons (an unreasonable response to Basilica's medical needs). Accordingly, they argue that Vega and Morris's unreasonable response to Basilica's suicide risk made their seizure unreasonable.

The Court declines this invitation to expand its interpretation of the Fourth Amendment for two reasons. First, the dearth of caselaw to support this argument demonstrates its legal insufficiency. Second, the plaintiffs have established that Basilica entered SCSO custody much earlier in the day when the magistrate issued the ECO. (ECF No. 15 ¶ 66.) Vega and Morris did not seize Basilica at 12:18 a.m. on August 31, 2020, for the simple fact that she had been in SCSO custody since 1:11 p.m. on August 30, 2020. (*Id.* ¶¶ 66, 95.) Only a seizure triggers the Fourth Amendment's requirement of objective reasonableness, and the seizure was completed long before Basilica's suicide.

The plaintiffs have not pleaded a claim upon which relief may be granted. Accordingly, the Court will grant the defendants' motion to dismiss Count Two of the amended complaint.

### *C. Deliberate Indifference (Count Three)*

*Farmer v. Brennan* established the two-prong framework for deliberate indifference. 511 U.S. 825 (1994). The standard applies to both prisoners (under the Eighth Amendment) and pretrial detainees (under the Fourteenth Amendment). *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). The Fourth Circuit concluded that deliberate indifference also applies to those "in custody pending emergency psychiatric care." *Buffington v. Baltimore Cnty*, 913 F.2d 113, 120 (4th Cir. 1990) ("we cannot conceive of [] any reason why the Constitution might forbid deliberate indifference to the serious medical needs of pretrial detainees but permit such indifference to the needs of one in custody pending emergency psychiatric care").

For the first prong, the alleged constitutional deprivation "must be, objectively, sufficiently serious" and "result in the denial of the minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations omitted). In cases alleging a failure to prevent harm, the plaintiff "must show" that she was held "under conditions posing a substantial risk of serious harm." *Id.* The Fourth Circuit has found that "[a] substantial risk of suicide is certainly the type of 'serious harm' that is contemplated by the first prong of *Farmer*." *Brown*, 240 F.3d at 389.

For the second prong, the "prison official must have a 'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "[D]eliberate indifference in this context lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir.1995)). A plaintiff can prove the official's state of mind with circumstantial evidence. *Id.* "Accordingly, prison officials may not simply bury their heads in the sand and thereby skirt liability." *Id.* Officials may rebut the presumption of recklessness but, absent a successful rebuttal, "actual knowledge can be shown by circumstantial evidence that the risk was so obvious that the [d]efendants had to know it." *Id.* at 134, 135. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

The plaintiffs satisfy the first prong in *Farmer* by alleging that Basilica had a substantial risk of suicide. Hospital staff evaluated Basilica as having a "high suicide risk;" magistrates issued an ECO and TDO based on the substantial risk of harm Basilica posed to herself and others. (ECF No. 15 ¶ 47.) Basilica's ultimate suicide in custody bears out both the substantial risk and the serious harm.

The plaintiffs satisfy the second prong in *Farmer* by alleging that the risk of harm was obvious. First, the plaintiffs allege that Vega and Morris knew individuals subject to a TDO posed a substantial risk of harm to themselves or others. As part of the special division within SCSO that transported TDO detainees, Vega and Morris had received special training on ECO and TDO. Second, the plaintiffs allege Vega and Morris knew – following the Howard incident – the importance of ensuring that suicidal individuals did not have access to firearms while in custody.

The defendants argue they had no direct knowledge that Basilica posed an imminent risk of suicide or that she could be armed. Neither defendant read Basilica's chart or knew her history.

Viewing the facts in the light most favorable to the plaintiffs, they have plausibly alleged that Basilica (1) had a substantial risk of suicide, and (2) the risk was obvious. Vega and Morris knew, by virtue of the TDO, that Basilica posed a substantial risk of harm even if they did not know the particulars of her psychiatric history. Accordingly, the Court will deny the defendants' motion to dismiss Count Three.

### D. Supervisory Liability (Count Four)

Municipal officials, in their official capacity, may face liability for the actions of their subordinates when those subordinates violate a federal right. *Monell v. Dept. Soc. Svcs.*, 436 U.S. 658 (1978). Although respondeat superior does not create § 1983 liability, a court may find an official liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 692, 694. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate

indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

Absent an official policy, an official may face supervisory liability for the constitutional violations their subordinates committed when the evidence shows:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations omitted). Because supervisory liability as an "issue is ordinarily one of fact, not law," the Court may require further factual development before deciding this issue. *Id.*

The plaintiffs make two arguments in support of Harris's supervisory liability. First, Harris and the SCSO had a custom of failing to properly handle individuals with mental health conditions. Second, Harris and the SCSO "had a custom or practice of failing to train personnel on how to properly hand, search, seize, detain, and transport individuals with mental and/ or behavioral health conditions in order to ensure such individuals do not have access to weapons." (ECF No. 15 ¶ 192.) The plaintiffs argue that, after Howard's attempted suicide in SCSO custody in 2018, Harris had actual knowledge of the risks involved in transporting mentally ill individuals and the importance of restricting their access to firearms. They assert Harris's inadequate response to Howard's attempted suicide amounted to deliberate indifference to the risks, noting that the SCSO does not have "a policy addressing suicide prevention." (*Id.* ¶ 197.) Finally, the plaintiffs directly attribute Basilica's death in custody to Harris's actions and decisions. Had Vega and Morris searched Basilica prior to transport, they would have discovered the gun and prevented her suicide.

The defendants argue that the plaintiffs may not rely on a single incident to satisfy their burden. (ECF No. 18, at 22.) The defendants misconstrue the plaintiffs' burden at this stage. (*Id.* citing *Shaw*, 13 F.3d at 805 (both parties appealing summary judgment); *Slakan v. Porter*, 737 F.2d 368, 370 (4th Cir. 1984) (defendants appealing jury verdict)). On a motion to dismiss, the Court considers the allegations and facts in the light most favorable to the plaintiffs, who are not required to prove their case in the complaint. Accordingly, when viewed in the light most favorable to the plaintiffs, the amended complaint adequately pleads supervisory liability. The Court will deny the motion to dismiss Count Four.

### *E. ADA and Rehabilitation Act Claims (Counts Five and Six)*

As noted above, the defendants move to dismiss Counts Five and Six, which are time-barred. The plaintiffs do not oppose this. Accordingly, the Court will grant the defendants' motion to dismiss Counts Five and Six.

### *F. Qualified Immunity*

The Court may consider affirmative "defenses on a 12(b)(6) motion only 'when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.'" *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996)). The Supreme Court urges lower courts to resolve qualified immunity questions "at the earliest stage possible in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation omitted). The Fourth Circuit recognizes, however, that "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) (noting that a court must reserve for trial the question of material fact concerning whether the alleged conduct occurred).

Because further factual development will assist the Court in deciding whether to grant qualified immunity at summary judgment, the Court will not consider the affirmative defense at this time.

## IV. CONCLUSION

The defendants move the Court to dismiss the complaint. For the reasons discussed above, the Court will grant in part the motion and will dismiss Counts Two, Five, and Six. The Court will deny the motion as to the remaining counts.

The Court will issue an appropriate Order

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 27 February 2023
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge